

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

FILED
IN OPEN COURT

JUL 24 2013

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | CRIMINAL NO. 2:13cr 94 |
| v. | ) | |
| | ) | 18 U.S.C. § 1349 |
| DONTE L. BATTIN, | ) | Conspiracy |
|     aka "Donte L. Batton" | ) | (Count 1) |
|     (Counts 1, 3, 8) | ) | |
| | ) | 18 U.S.C. § 1344 |
| TED JOE ARMSTEAD | ) | Bank Fraud |
|     (Counts 1, 2, 7) | ) | (Counts 2-6) |
| | ) | |
| DYMOND CHAPPELLE, | ) | |
|     aka "Chyna" | ) | 18 U.S.C. § 1028A |
|     (Counts 1, 4, 9) | ) | Aggravated Identity Theft |
| | ) | (Counts 7-11) |
| CAMRON B. WITKOWSKI, | ) | |
|     aka "Cameron B. Witkowski" | ) | |
|     (Counts 1, 5, 10) | ) | 18 U.S.C. §§ 981 and 982 and |
| | ) | 21 U.S.C. § 853(p) and |
|     and | ) | 28 U.S.C. § 2461(c) |
| | ) | Forfeiture |
| CAMERON M. ALLEN | ) | |
|     (Counts 1, 6, 11) | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

July 2013 Term – at Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

### COUNT ONE

A.    THE CONSPIRACY

From in or about January 2013 and continuing through in or about March 2013, in the

Eastern District of Virginia and elsewhere, DONTE L. BATTIN, TED JOE ARMSTEAD,

CAMERON M. ALLEN, DYMOND CHAPPELLE, and CAMRON B. WITKOWSKI, all defendants herein, knowingly and unlawfully combined, conspired and agreed together with one another and others, both known and unknown to the grand jury, to commit the following offense against the United States, that is, to execute or attempt to execute a scheme or artifice to defraud the Navy Federal Credit Union ("NFCU"), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of NFCU, by means of materially false or fraudulent pretenses, representations, or promises, in violation of Title 18, United States Code, Section 1344.

B.      OBJECT, WAYS, MANNER, AND MEANS OF THE CONSPIRACY

The ways, manner, and means by which the conspiracy was carried out included, but were not limited to, the following:

1.      The object of the conspiracy was to obtain money for their benefit and enrichment by executing a scheme to defraud NFCU.

2.      It was part of the conspiracy to use personally identifiable information ("PII"), including but not limited to information such as name, social security number, date of birth, and bank/credit union account information, of unknowing individuals who provided such information as part of an apartment lease application.

3.      The PII in the apartment lease applications was provided by the individuals for the legitimate purpose of applying to lease an apartment at the North Shore Gardens Apartments in Norfolk, Virginia, which is in the Eastern District of Virginia, and the individuals had no way of knowing that the information would be used for other than its legitimate purpose.

4.    It was further part of the conspiracy to use the information in the lease agreements to identify individuals who had existing NFCU bank accounts and to defraud NFCU.

5.    It was further part of the conspiracy to impersonate and assume the identity of the individuals (hereinafter "victims") for whom they had PII and NFCU bank account information. Either by telephone or via the internet, the conspirators, under the false pretense or representation that they were the legitimate accountholder, would apply for loans and execute electronic funds transfers using the victims' identifying information and bank account information without authorization.

6.    It was further part of the conspiracy to recruit individuals who had NFCU bank accounts to serve as "hosts" for funds transfers.

7.    The conspirators would cause existing funds in the victim account − either the victim's own money, cash advances, or loan proceeds from the fraudulent loan applications as referenced above − to be electronically transferred to a host account.

8.    As part of an agreement between the conspirators and the host, the host would agree to accept the cash transfers made by the conspirators from the compromised victim NFCU accounts. For example, the conspirators would tell hosts that they needed money but had credit and account problems and asked whether the host would help them accepting a monetary transfer from one of the conspirator's relatives. After the transfer was executed by the conspirator, the host would withdraw the fraudulently obtained funds from their account and give them to the conspirator. After obtaining such monies, the conspirators sometimes gave the host a portion of the money for assisting in the transaction.

9.    It was further part of the conspiracy to use the fraudulently obtained funds to purchase money orders to avoid keeping large amounts of cash.

10.     During the period of January 2013 and continuing through in or about March 2013, the conspirators fraudulently obtained approximately $87,000 from their victims and NFCU.

11.     As a result of the conspirators' illegal and fraudulent actions and transactions, NFCU suffered losses of approximately $90,000.


C. OVERT ACTS

In furtherance of the conspiracy and to effect the object thereof, the following overt acts among others, were committed in the Eastern District of Virginia:

**D.P.'s Account at NFCU**

1.     In or about January 2013, TED JOE ARMSTEAD, recruited P.L. to accept monetary transfers into her account and to withdraw monies for him.

2.     On or about January 6, 2013, TED JOE ARMSTEAD called the NFCU call center, impersonated D.P., and transferred approximately $500 from D.P.'s account into P.L.'s NFCU account without D.P.'s knowledge and permission.

3.     On or about January 6, 2013, TED JOE ARMSTEAD called the NFCU call center, impersonated D.P., and transferred approximately $5,000 from D.P.'s account into P.L.'s NFCU account without D.P.'s knowledge and permission.

4.     On or about January 7, 2013, at the request of TED JOE ARMSTEAD, P.L. withdrew approximately $5,500 from her account and provided most of the monies to DONTE BATTIN.

5.      In or about January 2013, TED JOE ARMSTEAD, recruited D.T. to accept monetary transfers into his account and to withdraw monies for him.

6.      On or about January 6, 2013, TED JOE ARMSTEAD called the NFCU call center, impersonated D.P., and transferred approximately $500 from D.P.'s account into D.T.'s NFCU account without D.P.'s knowledge and permission.

7.      On or about January 7, 2013, at the request of TED JOE ARMSTEAD, D.T. withdrew approximately $500 from her account using an ATM in Norfolk and provided most of the monies to TED JOE ARMSTEAD.

**E.L.'s Account at NFCU**

8.      In or about February 2013, DONTE BATTIN, recruited L.C. to accept monetary transfers into her account and to withdraw monies for them.

9.      On or about February 4, 2013, DONTE BATTIN called the NFCU call center, impersonated E.L., and transferred approximately $2,100 from E.L.'s account into L.C.'s NFCU account without E.L.'s knowledge and permission.

10.     On or about February 4, 2013, at the request of DONTE BATTIN, L.C. withdrew approximately $2,000 from her account and provided the monies to an individual designated by DONTE BATTIN.

11.     In or about February 2013, DONTE BATTIN and DYMOND CHAPPELLE recruited A.L. to accept monetary transfers into his account and to withdraw monies for them.

12.     On or about February 18, 2013, DONTE BATTIN signed on to E.L.'s bank account via the Internet using E.L.'s personal information and transferred approximately $5,000 from E.L.'s account into A.L.'s NFCU account without E.L.'s knowledge and permission.

13.     On or about February 18, 2013, at the request of DONTE BATTIN and DYMOND CHAPPELLE, A.L. went to a Walmart in Norfolk, purchased approximately $4,200 worth of money orders using his Visa debit card, made the money orders payable to DYMOND CHAPPELLE, and provided them to her.

**J.W.'s Account at NFCU**

14.     In or about January 2013, TED JOE ARMSTEAD and DONTE BATTIN recruited A.D. to accept monetary transfers into his account and to withdraw monies for them.

15.     On or about January 31, 2013, DONTE BATTIN called the NFCU call center, impersonated J.W., and requested a $720 credit card cash advance.

16.     On or about January 31, 2013, a conspirator called the NFCU call center and transferred approximately $1,400 from J.W.'s account into A.D.'s NFCU account without J.W.'s knowledge and permission.

17.     On or about January 31, 2013, at the request of DONTE BATTIN, A.D. withdrew approximately $1,400 from his account and provided the monies to an individual designated by DONTE BATTIN.

**M.D's Account at NFCU**

18.     In or about February 2013, DYMOND CHAPPELLE recruited G.H. to accept monetary transfers into his account and to withdraw monies for her.

19.     On or about February 6, 2013, DYMOND CHAPPELLE called the NFCU call center, impersonated M.D., and transferred $5,000 from M.D.'s account to G.H.'s NFCU without M.D.'s knowledge and permission.

20.     On or about February 6, 2013, at the request of DYMOND CHAPPELLE, G.H. withdrew approximately $5,000 from his account and provided the monies to DYMOND CHAPPELLE.

21.     In or about February 2013, at the direction of DONTE BATTIN, M.T. was recruited to accept monetary transfers into her account and to withdraw monies for him.

22.     On or about February 7, 2013, DYMOND CHAPPELLE called the NFCU call center, impersonated M.D., and transferred $2,600 from M.D.'s account to M.T.'s account without M.D.'s knowledge and permission.

23.     On or about February 7, 2013, at the request of DONTE BATTIN, M.T. withdrew approximately $2,600 at an NFCU in Hampton and provided the monies to DONTE BATTIN.

**D.B.'s Account at NFCU**

24.     In or about February 2013, at the direction of DONTE BATTIN, M.T. was recruited to accept monetary transfers into her account and to withdraw monies for him.

25.     On or about February 9, 2013, a conspirator called the NFCU call center, impersonated D.B., and transferred $1,400 from D.B.'s account to M.T.'s account without D.B.'s knowledge and permission.

26.     On or about February 9, 2013, at the request of DONTE BATTIN, M.T. withdrew approximately $1,400 at an NFCU in Hampton and provided the monies to DONTE BATTIN.

7

**A.F.'s Account at NFCU**

27.     In or about February 2013, at the direction of DONTE BATTIN and CAMERON ALLEN, D.R. was recruited to accept monetary transfers into her account and to withdraw monies for them.

28.     On or about February 24, 2013, a conspirator called the NFCU call center, impersonated A.F., and transferred $600 from A.F.'s account to D.R.'s account without A.F.'s knowledge and permission.

29.     On or about February 24, 2013, at the request of DONTE BATTIN, M.T. withdrew approximately $1,400 at an NFCU in Hampton and provided the monies to DONTE BATTIN.

**J.F.'s Account at NFCU**

30.     In or about February 2013, DYMOND CHAPPELLE and CAMRON WITKOWSKI recruited K.T. to accept monetary transfers into his account and to withdraw monies for them.

31.     On or about February 22, 2013, a conspirator called the NFCU call center, impersonated J.F., and transferred approximately $1,300 from J.F.'s account to K.T.'s NFCU account without J.F.'s knowledge and permission.

32.     On or about February 23, 2013, at the request of DYMOND CHAPPELLE and CAMRON WITKOWSKI, K.T. withdrew approximately $692 from his account and provided the monies to DYMOND CHAPPELLE.

**M.B.'s Account at NFCU**

33. In or about February 2013, the exact date being unknown, DONTE BATTIN and CAMERON ALLEN recruited B.K, to accept monetary transfers into his account and to withdraw monies for them.

34. On or about February 24, 2013, a conspirator called the NFCU call center, impersonated M.B., and transferred approximately $3,200 from M.B.'s account to B.K.'s NFCU account without M.B.'s knowledge and permission.

35. On or about February 24, 2013, a conspirator called the NFCU call center, impersonated M.B., and transferred approximately $600 from M.B.'s account to B.K.'s NFCU account without M.B.'s knowledge and permission.

36. On or about February 24, 2013, at the request of DONTE BATTIN AND CAMERON ALLEN, B.K. withdrew approximately $3,800 from his account via an ATM in Norfolk and the purchase of money orders from Walmart. The monies were provided to DONTE BATTIN and CAMERON ALLEN.

**M.R.'s Account at NFCU**

37. In or about March 2013, DYMOND CHAPPELLE and CAMRON WITKOWSKI recruited W.H. to accept monetary transfers into his account and to withdraw monies for them.

38. On or about March 3, 2013, DYMOND CHAPPELLE called the NFCU call center, impersonated M.R., and transferred approximately $500 from M.R.'s account to W.H.'s NFCU account without M.R.'s knowledge and permission.

39. On or about February 23, 2013, at the request of DYMOND CHAPPELLE and CAMRON WITKOWSKI, W.H. withdrew approximately $500 from his account at an ATM in Norfolk and provided the monies to DYMOND CHAPPELLE.

**H.V.s Account at NFCU**

40.     In or about March 2013, CAMERON ALLEN, DYMOND CHAPPELLE and CAMRON WITKOWSKI recruited D.V. to accept monetary transfers into his account and to withdraw monies for them.

41.     On or about March 4, 2013, CAMERON ALLEN called the NFCU call center, impersonated H.V., and transferred approximately $2,000 from H.V.'s account to D.V.'s NFCU account without H.V.'s knowledge and permission.

42.     On or about March 4, 2013, at the request of CAMERON ALLEN, D.V. withdrew approximately $500 from an ATM and purchased three $500 Moneygrams from a Walmart on Tidewater Drive in Norfolk.

43.     In or about March 2013, CAMERON ALLEN and CAMRON WITKOWSKI recruited R.P. to accept monetary transfers into his account and to withdraw monies for them.

44.     On or about March 5, 2013, CAMRON WITKOWSKI called the NFCU call center, impersonated H.V., and transferred approximately $3,000 from H.V.'s account to R.P.'s NFCU account without H.V.'s knowledge and permission.

45.     On or about March 5, 2013, at the request of CAMERON ALLEN and CAMRON WITKOWSKI, R.P. withdrew approximately $3,000 from his account and provided the monies to CAMERON ALLEN.

**R.T.'s Account at NFCU**

46.     In or about March 2013, the exact date being unknown, DYMOND CHAPPELLE recruited H.G. to accept monetary transfers into his account and to withdraw monies for them.

47. On or about March 8, 2013, CAMRON WITKOWSKI, called the NFCU call center, impersonated R.T., and transferred approximately $2,900 from R.T.'s account to H.G.'s NFCU account without R.T.'s knowledge and permission.

48. On or about March 8, 2013, at the request of DYMOND CHAPPELLE and CAMRON WITKOWSKI, H.G. withdrew approximately $2,800 from his account at a NFCU in Norfolk and provided the monies to CAMRON WITKOWSKI.

**J.C.F.'s Account at NFCU**

49. In or about March 2013, CAMERON ALLEN recruited B.E. to accept monetary transfers into his account and to withdraw monies for him.

50. On or about March 9, 2013, CAMERON ALLEN called the NFCU call center, impersonated J.C.F., and transferred approximately $2,000 from J.C.F.'s account to B.E.'s NFCU account without J.C.F.'s knowledge and permission.

51. On or about March 9, 2013, at the request of CAMERON ALLEN, B.E. withdrew approximately $2,000 from his account by purchasing money orders at a Walmart in Norfolk and by withdrawing cash from an ATM in Norfolk and provided the monies to CAMERON ALLEN.

(In violation of Title 18, United States Code, Section 1349.)

## COUNT TWO

During the period from in or about January 2013 and continuing through in or about March 2013, in the Eastern District of Virginia and elsewhere, Donte L. Battin, TED JOE ARMSTEAD, a defendant herein, Cameron M. Allen, Dymond Chappelle, and Camron B. Witkowski, knowingly executed and attempted to execute a scheme or artifice to defraud Navy Federal Credit Union (NFCU), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of NFCU by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

1.      The object of the scheme and artifice was to obtain moneys from NFCU for their benefit and enrichment by various fraudulent means and methods.

2.      It was part of the scheme and artifice to use personally identifiable information ("PII"), including but not limited to information such as name, social security number, date of birth, and bank/credit union account information, of unknowing individuals who provided such information as part of an apartment lease application.

3.      The PII in the apartment lease applications was provided by the individuals for the legitimate purpose of applying to lease an apartment at the North Shore Gardens Apartments in Norfolk, Virginia, which is in the Eastern District of Virginia, and the individuals had no way of knowing that the information would be used for other than its legitimate purpose.

4.      It was further part of the scheme and artifice to use the information in the lease agreements to identify individuals who had existing NFCU bank accounts and to defraud NFCU.

5.      As part of the scheme and artifice, the defendants would assume the identity of the individuals (hereinafter "victims") for whom they had PII and NFCU bank account

information. Either by telephone or via the internet, the defendants, under the false pretense or representation that they were the legitimate accountholder, would apply for loans and execute electronic funds transfers using the victims' identifying information and bank account information without authorization.

6. It was further part of the scheme and artifice for the defendants to recruit individuals who had NFCU bank accounts to serve as "hosts" for funds transfers.

7. The defendants would cause existing funds in the victim account – either the victim's own money, cash advances, or loan proceeds from the fraudulent loan applications as referenced above – to be electronically transferred to a host account.

8. As part of an agreement between the defendants and the host, the host would agree to accept the cash transfers made by the defendants from the compromised victim NFCU accounts. For example, a defendant would tell a host that they needed money but had credit and account problems and asked whether the host would help them by accepting a monetary transfer from the defendant's relative. After the transfer was executed by the defendant, the host would withdraw the fraudulently obtained funds from their account and give them to the defendant. After obtaining such monies, the defendants sometimes gave the host a portion of the money for assisting in the transaction.

9. It was further part of the conspiracy to use the fraudulently obtained funds to purchase money orders to avoid keeping large amounts of cash.

10. As a result of the conspirators' illegal and fraudulent actions and transactions, NFCU suffered losses.

11. In furtherance of the scheme and artifice, and to effect its object, defendant TED JOE ARMSTEAD committed and caused to be committed acts in the Eastern District of Virginia and elsewhere, which include, but are not limited to the following:

12.     In or about January 2013, TED JOE ARMSTEAD, recruited P.L. to accept monetary transfers into her account and to withdraw monies for him.

13.     On or about January 6, 2013, TED JOE ARMSTEAD called the NFCU call center, impersonated D.P., and transferred approximately $500 from D.P.'s account into P.L.'s NFCU account without D.P.'s knowledge and permission.

14.     On or about January 6, 2013, TED JOE ARMSTEAD called the NFCU call center, impersonated D.P., and transferred approximately $5,000 from D.P.'s account into P.L.'s NFCU account without D.P.'s knowledge and permission.

15.     On or about January 7, 2013, at the request of TED JOE ARMSTEAD, P.L. withdrew approximately $5,500 from her account and provided most of the monies to DONTE BATTIN.

## COUNT THREE

During the period from in or about January 2013 and continuing through in or about March 2013, in the Eastern District of Virginia and elsewhere, DONTE L. BATTIN, a defendant herein, Ted Joe Armstead, Cameron M. Allen, Dymond Chappelle, and Camron B. Witkowski, all defendants herein, knowingly executed and attempted to execute a scheme or artifice to defraud Navy Federal Credit Union (NFCU), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of NFCU by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

1.     The allegations contained in paragraphs 1-10 of Count Two above are hereby realleged and incorporated by reference, as if fully set forth herein.

2.     In or about February 2013, DONTE BATTIN, recruited L.C. to accept monetary transfers into her account and to withdraw monies for him.

3.     On or about February 4, 2013, DONTE BATTIN called the NFCU call center, impersonated E.L., and transferred approximately $2,100 from E.L.'s account into L.C.'s NFCU account without E.L.'s knowledge and permission.

4.     On or about February 4, 2013, at the request of DONTE BATTIN, L.C. withdrew approximately $2,000 from her account and provided the monies to an individual designated by DONTE BATTIN.

(In violation of Title 18, United States Code, Sections 1344 and 2.)

15

## COUNT FOUR

During the period from in or about January 2013 and continuing through in or about March 2013, in the Eastern District of Virginia and elsewhere, Donte L. Battin, Ted Joe Armstead, Cameron M. Allen, DYMOND CHAPPELLE, a defendant herein, and Camron B. Witkowski, knowingly executed and attempted to execute a scheme or artifice to defraud Navy Federal Credit Union (NFCU), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of NFCU by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

1.     The allegations contained in paragraphs 1-10 of Count Two above are hereby realleged and incorporated by reference, as if fully set forth herein.

2.     In or about February 2013, the exact date being unknown, DYMOND CHAPPELLE recruited G.H. to accept monetary transfers into his account and to withdraw monies for her.

3.     On or about February 6, 2013, DYMOND CHAPPELLE called the NFCU call center, impersonated M.D., and transferred $5,000 from M.D.'s account to G.H.'s NFCU without M.D.'s knowledge and permission.

4.     On or about February 6, 2013, at the request of DYMOND CHAPPELLE, G.H. went to an NFCU in Chesapeake, withdrew approximately $5,000 from his account and provided the monies to DYMOND CHAPPELLE.

(In violation of Title 18, United States Code, Sections 1344 and 2.)

## COUNT FIVE

During the period from in or about January 2013 and continuing through in or about March 2013, in the Eastern District of Virginia and elsewhere, Donte L. Battin, Ted Joe Armstead, Cameron M. Allen, Dymond Chappelle, and CAMRON B. WITKOWSKI, a defendant herein, knowingly executed and attempted to execute a scheme or artifice to defraud Navy Federal Credit Union (NFCU), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of NFCU by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

1.      The allegations contained in paragraphs 1-10 of Count Two above are hereby realleged and incorporated by reference, as if fully set forth herein.

2.      In or about March 2013, CAMERON ALLEN and CAMRON WITKOWSKI recruited R.P. to accept monetary transfers into his account and to withdraw monies for them.

3.      On or about March 5, 2013, CAMRON WITKOWSKI called the NFCU call center, impersonated H.V., and transferred approximately $3,000 from H.V.'s account to R.P.'s NFCU account without H.V.'s knowledge and permission.

4. On or about March 5, 2013, at the request of CAMERON ALLEN and CAMRON WITKOWSKI, R.P. withdrew approximately $3,000 from his account and provided the monies CAMERON ALLEN.

(In violation of Title 18, United States Code, Sections 1344 and 2.)

## COUNT SIX

During the period from in or about January 2013 and continuing through in or about March 2013, in the Eastern District of Virginia and elsewhere, Donte L. Battin, Ted Joe Armstead, CAMERON M. ALLEN, a defendant herein, Dymond Chappelle, and Camron B. Witkowski, knowingly executed and attempted to execute a scheme or artifice to defraud Navy Federal Credit Union (NFCU), a financial institution with deposits insured by the National Credit Union Share Insurance Fund, and to obtain moneys, funds, credits, assets, securities, and other property owned by or under the custody or control of NFCU  by means of materially false and fraudulent pretenses, representations, and promises, which scheme and artifice, and the execution thereof, operated in substance as follows:

1.      The allegations contained in paragraphs 1-10 of Count Two above are hereby realleged and incorporated by reference, as if fully set forth herein.

2.      In or about March 2013, CAMERON ALLEN recruited B.E. to accept monetary transfers into his account and to withdraw monies for him.

3.      On or about March 9, 2013, CAMERON ALLEN called the NFCU call center, impersonated J.C.F., and transferred approximately $2,000 from J.C.F.'s account to B.E.'s NFCU account without J.C.F.'s knowledge and permission.

4.      On or about March 9, 2013, at the request of CAMERON ALLEN, B.E. withdrew approximately $2,000 from his account by purchasing money orders at a Walmart in Norfolk and by withdrawing cash from an ATM in Norfolk and provided the monies to CAMERON ALLEN.

(In violation of Title 18, United States Code, Sections 1344 and 2.)

## COUNT SEVEN

On or about January 6 and 7, 2013, in Norfolk, in the Eastern District of Virginia, defendant TED JOE ARMSTEAD did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of conspiracy to commit bank fraud and bank fraud in violation of Title 18, United States Code, Sections 1349 and 1344, respectively, as charged in Count One and Two of this Indictment), that is, the defendant impersonated D.P. and used D.P.'s name, bank access number, and account number while transferring and withdrawing approximately $5,500 from an NFCU bank account in D.P.'s name.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2).

## COUNT EIGHT

On or about February 18, 2013, in Norfolk, in the Eastern District of Virginia, defendant DONTE L. BATTIN did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of conspiracy to commit bank fraud and bank fraud in violation of Title 18, United States Code, Sections 1349 and 1344, respectively, as charged in Count One and Three of this Indictment), that is, the defendant impersonated E.L. and used E.L.'s name, bank access number, or account number while transferring and withdrawing approximately $2,100 from an NFCU bank account in E.L.'s name.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2).

## COUNT NINE

On or about February 6, 2013, in Norfolk, in the Eastern District of Virginia, defendant DYMOND CHAPPELLE did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of conspiracy to commit bank fraud and bank fraud in violation of Title 18, United States Code, Sections 1349 and 1344, respectively, as charged in Count One and Four of this Indictment), that is, the defendant impersonated M.D. and used M.D.'s name, bank access number, or account number while transferring and withdrawing approximately $5,000 from an NFCU bank account in M.D.'s name.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2).

## COUNT TEN

On or about March 5, 2013, in Norfolk, in the Eastern District of Virginia, defendant CAMRON WITKOWSKI did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of conspiracy to commit bank fraud and bank fraud in violation of Title 18, United States Code, Sections 1349 and 1344, respectively, as charged in Count One and Five of this Indictment), that is, the defendant impersonated H.V. and used H.V.'s name, bank access number, or account number while transferring and withdrawing approximately $3,000 from an NFCU bank account in H.V.'s name.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2).

## COUNT ELEVEN

On or about March 9, 2013, in Norfolk, in the Eastern District of Virginia, defendant CAMRON ALLEN did knowingly possess and use, without lawful authority, a means of identification of another person during and in relation to a felony violation contained in chapter 63 of Title 18, United States Code (namely, the crime of conspiracy to commit bank fraud and bank fraud in violation of Title 18, United States Code, Sections 1349 and 1344, respectively, as charged in Count One and Six of this Indictment), that is, the defendant impersonated J.C.F. and used J.C.F.'s name, bank access number, or account number while transferring and withdrawing approximately $2,000 from an NFCU bank account in J.C.F.'s name.

(In violation of Title 18, United States Code, Sections 1028A(a)(1), 1028A(c)(5) and 2).

## FORFEITURE ALLEGATION

THE GRAND JURY FURTHER CHARGES THAT:

Pursuant to Federal Rule of Criminal Procedure 32.2, the allegations contained in Counts 1 through 6 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(7), and Title 28, United States Code, Section 2461(c).

Upon conviction of any offense in Counts 1 – 6, the defendants, DONTE L. BATTIN, TED JOE ARMSTEAD, CAMERON M. ALLEN, DYMOND CHAPPELLE, and CAMRON B. WITKOWSKI, shall forfeit to the United States of America any property, real and personal, which constitutes or is derived, directly or indirectly, from proceeds traceable to such offense(s). Property subject to forfeiture consists of, but is not limited to, the following:

1. The sum of not less than $55,335, which represents the net proceeds of such offenses.

2. Any other property belonging to the defendants, up to the value of the property subject to forfeiture, if any property subject to forfeiture, as a result of any act or omission of the defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred to, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

(In accordance with 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(7), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).)

*United States v. Donte Battin, et al., 2:13cr94*

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

A TRUE BILL:

_____
Foreperson

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____
Randy Stoker
Assistant United States Attorney
Virginia State Bar No. 73455
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
757-441-6331 Office
757-441-6689 Fax
randy.stoker@usdoj.gov